IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JOSE RENE CASTANEDA-MONDRAGON,   )<br>   )<br>    Petitioner,   )<br>   )<br>v.   )<br>   )<br>BRIAN ACUNA, Acting Field Office   )<br>Director of Immigration and Customs   )<br>Enforcement, New Orleans Field Office, et   )<br>al.,   )<br>   )<br>    Respondents.   ) | No. 2:25-cv-03044-SHL-tmp |

**ORDER GRANTING PETITION**

On November 14, 2025, Petitioner Jose Rene Castaneda-Mondragon filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody and/or a bond hearing, among other things. (ECF No. 1.) The Court ordered Castaneda-Mondragon to provide supplemental facts and serve Respondents, and for Respondents to file a response in writing. (ECF No. 7.) Respondents filed their response five days later. (ECF No. 11.) Castaneda-Mondragon did not reply, and his time to do so has expired. (See ECF No. 7 at PageID 22.) For the reasons stated below, the Petition is **GRANTED**. Castaneda-Mondragon is entitled to a bond hearing.

**BACKGROUND**

Castaneda-Mondragon is a Mexican citizen who entered the United States in February 2002 near Arizona. (ECF No. 11-1 at PageID 44.) When he entered, he was either seventeen or eighteen years old. (ECF No. 11 at PageID 35.) He was not inspected by Immigration Officers

at the time, and has remained present in the United States since entry. (ECF Nos. 8 at PageID 24–25; 11-1 at PageID 44–45; 11 at PageID 35.)

Castaneda-Mondragon has been charged with several crimes after entering the country, including driving on a suspended license four separate times between 2009 and 2015. (ECF No. 12-1 at PageID 67–69.) On August 17, 2013, he was also arrested for failure to appear at court, which appears to have constituted a probation violation. (Id. at PageID 68–69.) Finally, on January 19, 2015, he was charged with DUI. (Id. at PageID 69.)

On October 22, 2025, Immigrations and Customs Enforcement ("ICE") officers arrested Castaneda-Mondragon at the Wilson County Courthouse in Lebanon, Tennessee, as he was attending a hearing. (ECF No. 11-1 at PageID 44.) The next day, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Castaneda-Mondragon with being removable "from the United States" under 8 U.S.C. § 1182(a)(6)(A) and (a)(7)(A)[1] because he is (1) "an alien present . . . without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General;" and (2) "is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, . . . other valid entry document . . . valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act." (ECF No. 11-2 at PageID 49.) Castaneda-Mondragon was scheduled for a hearing in immigration court in Memphis a month later, but that hearing was

---

[1] These sections outline who constitutes "inadmissible aliens" under the Immigration and Nationality Act. Congress passed the Act in 1952 and amended it in 1990 to reform the naturalization and removal procedures applicable to immigrants. Ebu v. U.S. Citizenship & Immigr. Servs., 134 F.4th 895, 899–900 (6th Cir. 2025).

continued until December 5.  (ECF No. 11-3.)  The record includes no other information about that hearing.

Under recently adopted guidance from DHS and ICE, Castaneda-Mondragon was subjected to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the Immigration and Nationality Act ("INA") and was declared ineligible to be released on bond.

This determination is consistent with other positions taken by DHS, ICE, and Immigration Courts in cases in this District and others.  See Godinez-Lopez v. Ladwig, No. 25-cv-02962, ECF No. 20 (W.D. Tenn. Oct. 31, 2025); Camacho-Cruz v. Acuna, No. 25-cv-03035, ECF No. 1 (W.D. Tenn. Nov. 12, 2025); Torrealba v. U.S. Dep't of Homeland Sec., No. 25CV01621, 2025 U.S. Dist. LEXIS 164153, at *5–8 (N.D. Ohio Aug. 25, 2025) (discussing how an immigration judge declared that they lacked jurisdiction to release a petitioner on bond at her bond hearing).  However, until recently, most immigrants in these situations were given bond hearings.  (ECF No. 1-2 at PageID 13.)  Indeed, § 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons.  (Id. at PageID 15.)  For example, § 1226(c) prohibits releasing those with certain criminal records on bond, and § 1225 precludes a bond for all "applicants for admission." "Applicants for admission" has, for decades, been interpreted to include those who have not been "physically present in the United States continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

3

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  (Id.)  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).  (Id.)  Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).  (ECF No. 1 at PageID 12–13, 16.)

Castaneda-Mondragon, who has lived continuously in the United States for more than two decades, faces the risk of continued detention without a bond hearing.  His Petition alleges Due Process violations under the Fifth Amendment and unreasonable seizure under the Fourth Amendment.  (ECF No. 1 at PageID 6–7.)  He seeks a writ of habeas corpus ordering immediate release on "reasonable bond or parole;" provision of "a meaningful bond hearing before an impartial adjudicator within a reasonable time;" a declaration that his indefinite detention "without a bond hearing is unlawful and violates due process;" and/or an award of his costs and attorney's fees under the Equal Access to Justice Act.  (Id. at PageID 7.)  Respondents contend

that Castaneda-Mondragon failed to exhaust his administrative claims and that he is not entitled to relief.  (ECF No. 11 at PageID 33–35.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 2:25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Castaneda-Mondragon challenges his detention without bond as violative of his constitutional rights.  (ECF No. 1-2 at PageID 13.)  The Court first considers the threshold question of whether Castaneda-Mondragon should be required to exhaust his administrative remedies.  Then, the statutes are construed to determine whether §1225 or § 1226 is applicable.  A due process analysis follows.  Finally, Castaneda-Mondragon's request for attorney's fees is briefly reviewed.

### I. Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief.  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the

5

courts will review their habeas petitions. E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims. Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile." Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (internal quotations and citations omitted).

An issue is fit for judicial resolution when it presents a purely legal question. Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)). Further, when administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship. Id. If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused. Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Castaneda-Mondragon does not address administrative exhaustion in his filings. Despite this, Respondents first argue that the Court should dismiss the Petition based on prudential exhaustion, as Castaneda-Mondragon has not appealed to the BIA and received an adverse decision. (ECF No. 11 at PageID 37.) They acknowledge that the Sixth Circuit has not yet required exhaustion in these circumstances, but urge the Court to follow the decisions in Villalta, 2025 U.S. Dist. LEXIS 169688, and other Northern District of Ohio cases, which require exhaustion based partly on the fact that "Congress has provided a robust administrative hearing

6

and appeal process for foreign nationals in removal proceedings that include[s] evidentiary hearings, motion practice and appeals." (ECF No. 11 at PageID 38 (first citing 8 U.S.C. § 1229a; and then citing 8 C.F.R. § 236.1(d)(3)) (relying on Leonardo v. Crawford, 646 F.3d 1157 (9th Cir. 2011), which the Northern District of Ohio adopted in its decisions) (quotation modified).) According to Respondents, requiring exhaustion will "reduce the number of similar cases" before this Court, while acknowledging that Castaneda-Mondragon "may be unlikely to obtain the relief he seeks through the administrative process based on In re Yajure Hurtado, which binds the agency and the immigration courts and rejects [Castaneda-Mondragon's] arguments in this case." (Id.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody. And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these cases. (See ECF No. 11 at PageID 40 (explaining that the issue of which statute applies in immigrant detention petitions is currently before the Sixth Circuit in multiple cases).) Therefore, exhaustion may only be required here based on "sound judicial discretion." McCarthy, 503 U.S. at 144. To the contrary, exhaustion may be excused if "the legal question is fit for resolution and delay means hardship, or exhaustion would prove futile." Shalala, 529 U.S. at 13.

Although applying prudential exhaustion here to deny the Petition may reduce the number of these cases before the Court, Castaneda-Mondragon's failure to exhaust is excused. First, the question he poses in the Petition is fit for resolution and undue delay would impose hardship on him. Although there is factual dispute as to the specific date on which Castaneda-Mondragon arrived in the United States, the Parties do not dispute that he has been here for more than twenty years. (See ECF Nos. 8 at PageID 24; 11 at PageID 35.) Thus, deciding which

7

statute applies to Castaneda-Mondragon's detention is a purely legal question, "which is right in a federal court's wheelhouse." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8. Further, if Castaneda-Mondragon is required to pursue an appeal with the BIA, his appeal process would likely take six months or more. See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)). Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy. Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted). Therefore, denying Castaneda-Mondragon the chance to have a bond hearing merely because he did not appeal to the BIA[2] may force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here. The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been residing in the United States for years." Yajure Hurtado, 29 I. & N. Dec. at 220–21. Respondents here concede that In re Yajure Hurtado is binding on lower immigration courts and that Castaneda-Mondragon would be unlikely to obtain relief on appeal. (ECF No. 11 at PageID 38.) Thus, any appeal would be futile, and exhaustion is excused.

## II.     Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). Each word within the statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that

---

[2] Based on the record before the Court, there is no indication that there is even a decision that Castaneda-Mondragon could appeal at this stage, increasing the chance that waiting to appeal would cause undue delay.

'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens"). Section 1225(b) requires mandatory detention, providing in relevant part:

> (b) Inspection of applicants for admission
> . . .
> (2) Inspection of other aliens
> (A) In general
> Subject to subparagraphs (B) and (C), in the case of an alien who is an <u>applicant</u> <u>for</u> <u>admission</u>, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall</u> <u>be</u> <u>detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Under this section, all applicants for admission "shall be detained." Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien <u>may be arrested and detained</u> pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) <u>may continue to detain</u> the arrested alien; and
> (2) <u>may release</u> the alien on—
>   (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
>   . . .

9

8 U.S.C. § 1226(a) (emphasis added). The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii). "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an IJ."[3] <u>Lopez-Campos</u>, No. 25-cv-12486, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified). "The IJ evaluates whether there is a risk of nonappearance or danger to the community." <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Thus, except for those noncitizens with a record of certain criminal offenses, § 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[4]

Castaneda-Mondragon argues that ICE's new interpretation of § 1225(b)(2)(A) violates due process under the Fifth Amendment and his Fourth Amendment rights. (ECF No. 1-2 at PageID 13.) Further, he asserts that ICE's interpretation "deviates from established circuit precedent," and causes "prolonged detention in often harsh conditions." (<u>Id.</u> at PageID 13, 16.) He argues that 8 U.S.C. § 1226(a) applies to his detention because he has remained in the United States for years, and was not detained at the border as an "arriving alien." (<u>Id.</u> at PageID 13, 15–16.) For these reasons, he seeks immediate release or, at least, a bond hearing before an IJ.

---

[3] "IJ" refers to an immigration judge.
[4] <u>See</u> 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . . After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . . [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

Respondents argue that § 1225(b)(2)(A), not § 1226(a), applies to Castaneda-Mondragon because he "entered [the United States] without inspection or parole" and thus "remains an applicant for admission who is treated, for constitutional purposes, as if stopped at the border." (ECF No. 11 at PageID 39.) As a result, they assert "he is subject to mandatory detention and not entitled to a bond hearing." (Id.) They incorporate by reference their statutory arguments from Godinez-Lopez. (Id. at PageID 39–40.) In addition, they assert that, since the October hearing in Godinez-Lopez, they learned of at least "two additional cases" from the District of Nebraska and the District of Minnesota that found § 1225 applicable in similar situations. (Id. (first citing Vargas Lopez v. Trump, No. 25-526, 2025 WL 2780351, at *4–9 (D. Neb. Sep. 30, 2025); and then citing S.Q.D.C. v. Bondi, No. 25-3348, 2025 WL 2617973, at *2–3 (D. Minn. Sep. 9, 2025).)

Finally, Respondents argue that, if the Court decides that § 1226 applies to Castaneda-Mondragon, a bond hearing should be ordered before an IJ instead of immediate release. (Id. at PageID 41.) They emphasize that immediate release would be inappropriate because the immigration court must determine whether Castaneda-Mondragon poses "a flight risk or a danger to the community." (Id.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention that Castaneda-Mondragon is an "applicant for admission." Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal"

11

proceedings. But Castaneda-Mondragon was not "arriving" when he was detained hundreds of miles from the border in Tennessee, after having been in this country for more than twenty years. (ECF No. 11-1 at PageID 44.) Also, the record does not show that he was eligible for expedited removal proceedings. Thus, the mandatory detention provision of § 1225 does not apply to him.

Relatedly, the subject matter of § 1225 undercuts Respondents' reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."). Section 1225 explicitly applies to "an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). It does violence to the statute to argue that § 1225 applies to Castaneda-Mondragon, who has been physically present in the United States continuously for much longer than two years, and who is not actively crossing the border.

Further, Respondents' reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself. "If possible, every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). But to apply § 1225(b)(2)(A) to Castaneda-Mondragon would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the <u>examining immigration officer</u> determines that an alien <u>seeking</u> admission is <u>not clearly and beyond a doubt entitled to be admitted</u>, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). As Castaneda-Mondragon points out, he "is not 'seeking admission' in any meaningful sense." (ECF No. 8 at PageID 25.) He was not seeking anything immigration-related at the time of his arrest—he was attending a state court hearing. (ECF No. ECF No. 11-1 at PageID 44.) The record does not show that he received a determination that he was "not clearly and beyond a doubt entitled to be admitted." And he did not have pending immigration proceedings at the time of arrest. (See id.) The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for twenty-plus years. To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Respondents, is untenable.

Also, Respondents' interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous. That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond. Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained. 8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . ."). But, under Respondents' reading of § 1225, all arrested noncitizens must be mandatorily detained without bond. Thus, § 1226(c) would have no purpose. Yet, courts must "give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001). Castaneda-Mondragon's reading of the statute is the only one compatible with the presence of § 1226(c). And, although he has a criminal record, (see generally ECF No. 12-1), none of Castaneda-Mondragon's

13

convictions are the type found in § 1226(c)(1)(E)(ii), and determining whether he is a danger to the community is outside the scope of this Petition.

Indeed, the plain language of § 1226(a) describes Castaneda-Mondragon's situation. That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Castaneda-Mondragon was apprehended at court, arrested, and detained. Thus, the Attorney General has discretion under this section. She "may continue to detain [him]" or she "may release [him] on bond." (Id.) But the Attorney General may not deny him the bond hearing to which he is entitled. See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Castaneda-Mondragon's favor, but the Congressional intent behind § 1226(a) is also supportive. Earlier this year, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond. Pub. L. No. 119-1, 139 Stat. 3 (2025). Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondents assert, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally. In fact, it proves the opposite."). On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025. After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was

14

pointless." Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025)).

Given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for over twenty years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

## III.     Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen. See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020). Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

Here, because § 1226(a) applies to Castaneda-Mondragon, he is owed the process given to him under that statute. As to the Mathews factors, (1) Castaneda-Mondragon has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Castaneda-Mondragon's clean criminal record while not in custody for the previous ten years, it will be difficult for the Government to demonstrate an interest in his detention.

15

As a result, his detention without bond violated his liberty interest. Indeed, before he was apprehended at court, Castaneda-Mondragon had "established community ties," including four children who are U.S. citizens, and he had no record of removal proceedings. (ECF No. 8 at PageID 24–25.) Although he has a minor criminal record, and he resided here unlawfully, he was not otherwise incarcerated when ICE detained him. His expectation of liberty cannot be casually tossed aside. Thus, Castaneda-Mondragon is entitled to a bond hearing before an IJ. Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violated his due process rights.

Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Castaneda-Mondragon's petition is **GRANTED**. He is entitled to a bond hearing before an immigration court within a reasonable time.

## IV.    Attorney's Fees and Costs

Although not argued in detail in the briefs, Castaneda-Mondragon seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. (ECF No. 1 at PageID 7.) That provision allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ." 28 U.S.C. § 2412(b). "A claim for attorney's fees and related nontaxable expenses must be made by motion . . . ." Fed. R. Civ. P. 54(d)(2)(A). "In addition to the requirements of Fed. R. Civ. P. 54(d)(2)," the Court's Local Rules require that

> a motion for an award of attorney's fees shall be supported by a memorandum setting forth the authority of the Court to make such an award, why the movant should be considered the prevailing party, if such a consideration is required for the award, and any other factors that the Court should consider in making the award. The motion shall also be supported by:

(1) an affidavit or declaration of counsel setting out in detail the number of hours spent on each aspect of the case, and the rate customarily charged by counsel for such work; and,

(2) an affidavit or declaration of another attorney in the community, who is not otherwise involved with the case, setting out the prevailing rate charged in the community for similar services.  Within eleven days after service of the motion, the party against whom the award is requested shall respond with any objections thereto and an accompanying memorandum setting forth why the award is excessive, unwarranted, or unjust.

Loc. R. 54.1(b).

To pursue an award of attorney's fees and costs, Castaneda-Mondragon must file a motion with supporting affidavits in accordance with Local Rule 54.1(b).  He has **twenty-one days** from the date of entry of this Order to do so.

## CONCLUSION

For the reasons stated above, the petition is **GRANTED**.  Respondents are **ENJOINED** from pursuing Castaneda-Mondragon's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondents are further **ORDERED** to provide Castaneda-Mondragon with a bond hearing before an immigration judge under 8 U.S.C. § 1226(a) within **seven days** of the entry of this Order or otherwise release him.

**IT IS SO ORDERED,** this 30th day of December, 2025.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
CHIEF UNITED STATES DISTRICT JUDGE
